**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

Linda Moore,

Plaintiff,

-v.-

Equifax Information Services, LLC; and
Firstpoint Collection Resources, Inc.,

Defendants.

Case No.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Linda Moore brings this Complaint by and through counsel, against Defendants Equifax Information Services, LLC ("Equifax" or "Bureau"), and Firstpoint Collection Resources, Inc. ("Firstpoint", "Furnisher", or "Debt Collector"), and respectfully sets forth, complains, and alleges, upon information and belief, the following:

1. Plaintiff brings this action for damages arising from each Defendant's violations of 15 U.S.C. § 1681 *et seq*., the Fair Credit Reporting Act ("FCRA").

2. Plaintiff also brings this action for damages arising from Firstpoint's violations of 15 U.S.C. § 1692 *et seq*., the Fair Debt Collections Practices Act ("FDCPA").

3. As described more fully below, each Defendant improperly reported balances and delinquencies for an account on Plaintiff's credit report that did not belong to her.

4. Plaintiff disputed the reporting and provided the necessary documentation.

5. Each Defendant failed to reasonably investigate and correct the inaccuracies.

6. Debt Collector also improperly attempted to collect this debt from Plaintiff.

7. Plaintiff was thereby damaged.

**<u>JURISDICTION AND VENUE</u>**

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred here and the Defendants transact business in this State.

## PARTIES

10. Plaintiff resides in Piscataquis County, Maine.

11. At all times material hereto, Plaintiff was a "consumer" as defined under 15 U.S.C. § 1681a (c).

12. Defendant Equifax Information Services LLC is a consumer reporting agency defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

13. Equifax is a Georgia corporation registered to do business in this State.

14. Equifax may be served with process upon its registered agent at c/o Corporation Service Company, 45 Memorial Circle, Augusta, ME 04330.

15. Equifax is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

16. Firstpoint has an address for service at c/o C T Corporation System, 3 Chase Avenue, Augusta, ME 04330.

17. Firstpoint is a "person" who furnishes information to consumer reporting agencies.

18. Firstpoint is a debt collector as the phrase is defined in 15 U.S.C. § 1692a(6) and used in the FDCPA.

19. Upon information and belief, Firstpoint is a company that uses the mail, telephone, and facsimile and regularly engages in business the principal purpose of which is to attempt to collect debts alleged to be due another and/or regularly engages in debt collection.

## FACTUAL ALLEGATIONS

20. Plaintiff incorporates the above allegations as if set forth here.

21. In or around early April 2026, the address "5325 Whetstone Road" began appearing in Plaintiff's Equifax credit file.

22. Plaintiff has never resided at or otherwise been associated with 5325 Whetstone Road.

23. Plaintiff promptly disputed the inaccurate address with Equifax, and Equifax thereafter removed it from her credit file.

24. As subsequently confirmed by documents obtained from Firstpoint, 5325 Whetstone Road is associated with a different person whose name is similar to Plaintiff's.

25. Equifax therefore had notice, before the Account appeared in Plaintiff's credit file, that information associated with the other consumer had been incorrectly placed in Plaintiff's file.

26. On or about May 1, 2026, Plaintiff discovered that Equifax was reporting a collection account furnished by Firstpoint, account number ending in 2640 (the "Account").

27. The Account is showing as in collections.

28. The account is showing as delinquent since July 2023.

29. The Account identified National General as the original creditor and reported a balance of approximately $89.38.

30. The Account appeared only in Plaintiff's Equifax credit file.

31. It did not appear in her credit reports with Experian or TransUnion.

32. Plaintiff did not open the Account, obtain the insurance underlying the Account, incur the reported balance, or otherwise have any responsibility for the Account.

33. On or about May 1, 2026, Plaintiff promptly disputed the Account with both Equifax and Firstpoint ("First Dispute").

34. Responses from Equifax and Firstpoint dated May 7 and May 8, 2026, respectively, confirm that Plaintiff disputed the Account at that time.

35. In her initial disputes, Plaintiff did not claim that she had been the victim of identity theft or that another person had fraudulently used her identity.

36. Plaintiff instead explained that the Account simply did not belong to her.

37. Nevertheless, Equifax treated Plaintiff's initial dispute as an identity-theft dispute and advised Plaintiff that she was required to submit additional identity-theft documentation before Equifax would process it.

38. During subsequent communications, Equifax instructed Plaintiff to characterize the Account as resulting from identity theft and required her to obtain a police report.

39. Plaintiff followed Equifax's instructions because Equifax represented that doing so was necessary to obtain the removal of an Account that she knew was not hers.

40. Accordingly, Plaintiff's May 18, 2026 dispute materials ("Second Dispute") characterized the matter as identity theft, even though Plaintiff did so only at Equifax's direction (First Dispute and Second Dispute, each a "Dispute" and collectively "Disputes").

41. Even those dispute materials explained that the application underlying the Account used a Social Security number different from Plaintiff's Social Security number.

42. Plaintiff likewise obtained and submitted a police report only because Equifax required her to do so as a condition of addressing the inaccurate Account.

43. Equifax is required to notify Furnisher of Plaintiff's dispute(s).

44. It appears and is therefore averred that Equifax notified Furnisher of Plaintiff's dispute(s).

45. Equifax issued dispute results dated May 9, May 21, and May 26, 2026.

46. Those results demonstrate that Equifax processed Plaintiff's disputes but nevertheless continued to verify and report the Account as belonging to Plaintiff.

47. In or around mid-May 2026, Firstpoint sent Plaintiff a copy of the insurance contract underlying the Account (the "Insurance Contract").

48. The Insurance Contract concerns insurance issued for a Mercury Sable.

49. Plaintiff has never owned or operated a Mercury Sable, does not recognize the vehicle described in the Insurance Contract, and drives a Subaru.

50. The Insurance Contract does not contain Plaintiff's address, Social Security number, signature, or other identifying information, apart from a similar name and date of birth.

51. The Insurance Contract identifies the insured as "Linda Anne Moore," whereas Plaintiff's full name is "Linda Kaye Moore."

52. The Insurance Contract lists 5325 Whetstone Road—the same address that had appeared inaccurately in Plaintiff's Equifax credit file approximately one month earlier—as the insured's address.

53. Plaintiff has never resided at or had any connection to that address.

54. The Social Security number shown on the Insurance Contract, ending in 2634, is not Plaintiff's Social Security number.

55. The signature appearing on the Insurance Contract is not Plaintiff's signature.

56. Plaintiff even located and communicated with the other Linda Moore identified in the Insurance Contract.

57. That individual confirmed that she and Plaintiff are different people and expressed concern that her personal information had been disclosed to Plaintiff and other third parties.

58. The foregoing information establishes that the Account did not result from anyone stealing or fraudulently using Plaintiff's identity.

59. Instead, Firstpoint, National General, and/or Equifax carelessly matched an obligation associated with a different person named Linda Moore to Plaintiff's Equifax credit file.

60. The Insurance Contract and Plaintiff's dispute materials provided Defendants with information sufficient to distinguish Plaintiff from the person associated with the Account, including their different middle names, addresses, Social Security numbers, signatures, and vehicle information.

61. Had either Defendant conducted a reasonable investigation, it would have readily determined that Plaintiff was not the person identified in the Insurance Contract and was not responsible for the Account.

62. Notwithstanding this information, Firstpoint continued furnishing the Account as belonging to Plaintiff, and Equifax continued reporting it in Plaintiff's credit file.

63. Plaintiff repeatedly contacted Equifax concerning the inaccurate Account, at times calling Equifax nearly every day over a period of approximately one month.

64. During one of Plaintiff's most recent calls, an Equifax representative acknowledged that there appeared to be a problem and told Plaintiff to allow twenty-four hours for Equifax to remove the Account.

65. Plaintiff allowed Equifax additional time, including the ensuing weekend, but Equifax still failed to remove the Account.

66. Defendants' refusal to correct an obvious misidentification forced Plaintiff to continue expending substantial time and effort disputing an Account that the underlying documents plainly establish does not belong to her.

67. On information and belief, on date(s) better known to the Bureau, it issued credit reports concerning the Plaintiff that included the Account and incorrect balance(s).

68. On information and belief, on date(s) better known to the Bureau, it issued credit reports concerning the Plaintiff that included Account tradelines.

69. The Bureau had been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

70. Upon receipt of the Dispute of the Account the Bureau failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff about the disputed Account.

71. Upon receipt of the dispute of the account by the Plaintiff from the Bureau, Furnisher failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed Account.

72. Had each Defendant conducted a reasonable investigation it would have been revealed to it that its Account information was inaccurate.

73. Despite the Dispute by the Plaintiff that the information on her consumer report was inaccurate with respect to the disputed Account, each Defendant did not evaluate or consider any

of the information, claims, or evidence of the Plaintiff and did not make an attempt to substantially reasonably verify that the derogatory information concerning the disputed Account was inaccurate.

74. The Account delinquency and balance(s) were improperly placed on Plaintiff's credit report by each Defendant despite that it is not hers.

75. The Bureau's actions described herein violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.

76. The Bureau violated 15 U.S.C. § 1681e (b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit report.

77. The Bureau violated 15 U.S.C. § 1681i (a)(2) by failing to provide notice of the Dispute to Furnishers or, in the alternative, if the Bureau did provide notice, it failed to provide all relevant information concerning the Dispute.

78. Furnisher's actions described herein violated 15 U.S.C. 1681s-2 (b).

79. Notwithstanding Plaintiff's efforts, the Bureau continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

80. Each Defendant knew or had reason to know the information was inaccurate.

81. The Bureau was in possession of the documentation of the inaccuracies and fraud of the Account yet persisted in reporting it anyway.

82. Upon information and belief, the Bureau did not request any supporting documentation from Furnisher during its investigation(s) of Plaintiff's Dispute(s).

83. Upon information and belief, Furnisher did not send any documentation to the Bureau during its investigation(s) of Plaintiff's Dispute(s).

84. The Bureau's reporting of the above-referenced tradeline(s) continued to be inaccurate and materially misleading.

FDCPA Violations

85. The alleged Account obligation is a "debt" as defined by 15 U.S.C.§ 1692a (5).

86. The creditor of the Account is a "creditor" as defined by 15 U.S.C.§ 1692a (4).

87. Debt Collector collects and attempts to collect debts incurred or alleged to have been incurred for personal, family or household purposes on behalf of creditors using the United States Postal Services, telephone and internet.

88. Debt Collector reported the Account as derogatory on Plaintiff's credit report.

89. Debt Collector's collection of the Account was improper.

90. Debt Collector's collection of the Account was improper as it was not Plaintiff's debt.

91. Debt Collector's credit reporting of the Account also constitutes improper debt collection.

Damages

92. As a direct and proximate result of each Defendant's failure to comply with the FCRA, Plaintiff has suffered actual damages.

93. As a direct and proximate result of Firstpoint's failure to comply with the FDCPA, Plaintiff has suffered actual damages.

94. Defendants' reporting falsely portrayed Plaintiff as owing a delinquent collection obligation that she neither opened nor incurred.

95. The inaccurate Account harmed Plaintiff's reputation for creditworthiness and caused her to fear that lenders and other third parties would view her as unwilling or unable to satisfy her financial obligations.

96. Plaintiff's Equifax credit disclosure reflects a LendingTree soft inquiry dated May 23, 2026, during the period in which Equifax continued maintaining the inaccurate Account in her credit file.

97. Defendants' conduct caused Plaintiff to suffer a chilling effect on her willingness to seek credit because she reasonably feared that the inaccurate Account would adversely affect any application.

98. Plaintiff also lost substantial time attempting to correct the inaccurate reporting, including preparing repeated disputes, reviewing Defendants' responses, obtaining documentation, securing a police report at Equifax's insistence, and repeatedly communicating with Defendants.

99. Plaintiff contacted Equifax consistently and, during portions of the relevant period, called Equifax nearly every day in an effort to have the Account removed.

100. Plaintiff is a disabled veteran who suffers from post-traumatic stress disorder and severe anxiety.

101. The inaccurate reporting, Defendants' repeated verification of the Account, and their continuing refusal to correct the error substantially aggravated Plaintiff's preexisting PTSD and anxiety.

102. Plaintiff experienced severe stress, difficulty sleeping, emotional anguish, frustration, humiliation, and a sense of helplessness as a result of Defendants' conduct.

103. Plaintiff cried for days because of the inaccurate Account and Defendants' refusal to correct it despite the clear documentary evidence that it belonged to another person.

104. Plaintiff's emotional distress was intensified by Equifax's insistence that she treat the matter as identity theft and obtain a police report even though the underlying problem was Defendants' careless matching of another consumer's Account to Plaintiff.

105. Because of Plaintiff's disabilities, medical conditions, PTSD, and anxiety, traveling and completing in-person administrative tasks are particularly difficult and distressing for her.

106. Equifax's requirement that Plaintiff travel and expend additional effort obtaining a police report therefore imposed a substantial burden upon her and further aggravated her symptoms.

107. Defendants' conduct occurred during an especially vulnerable period in Plaintiff's life: Plaintiff had recently lost both of her parents and was recovering from two surgeries.

108. The inaccurate reporting and Defendants' dismissive handling of Plaintiff's disputes compounded the grief, physical strain, and emotional distress Plaintiff was already experiencing.

109. Plaintiff has suffered loss of time, emotional distress, mental anguish, anxiety, sleeplessness, humiliation, frustration, reputational harm, and interference with her ability to conduct her personal and financial affairs.

110. Defendants' repeated verification and continued reporting of the Account prolonged and intensified Plaintiff's injuries.

111. After exhausting her efforts to resolve the matter directly with Defendants, Plaintiff was left with no reasonable alternative but to retain counsel and institute this action.

**FIRST CAUSE OF ACTION**
**(Violations of the FCRA as to the Bureau)**

112. Plaintiff incorporates the allegations in the paragraphs above the First Cause of Action as if set forth here.

113. This is an action for willful and/or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

114. The Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that the Bureau maintained or furnished concerning the Plaintiff.

115. The Bureau violated 15 U.S.C. § 1681i (a) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's Dispute and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

116. The Bureau violated 15 U.S.C. § 1681i (a)(2) by failing to provide notice of the Dispute to Furnishers or, in the alternative, if the Bureau did provide notice, it failed to provide all relevant information concerning the Dispute.

117. The Bureau has willfully and recklessly, or in the alternative negligently, failed to comply with the Act.

118. The failure of the Bureau to comply with the Act include but is not necessarily limited to:

a. The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

b. The failure to remove and/or correct the inaccurate and derogatory credit information after a reasonable request by the Plaintiff;

c. The failure to promptly and adequately investigate information which the Bureau had notice was inaccurate;

d. The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

e. The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised the Bureau to delete;

f. The failure to take adequate steps to verify information the Bureau had reason to believe was inaccurate before including it in the credit report of the consumer;

g. The failure to provide notice of a dispute to the Furnishers or, in the alternative, the failure to provide Plaintiff all relevant information received from the Furnishers in response to a dispute.

119. As a result of the conduct, action and inaction of the Bureau, Plaintiff suffered damage as described above.

120. The conduct, action and inaction of the Bureau was willful rendering the Bureau liable for actual, statutory and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681n.

121. In the alternative, the conduct, action, and inaction of the Bureau was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

122. Plaintiff is entitled to recover reasonable costs and attorney's fees from the Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

123. WHEREFORE, Plaintiff demands judgment for damages together with attorney's fees and court costs pursuant to 15 U.S.C. §§ 1681n-1681o.

**SECOND CAUSE OF ACTION**
**(Violation of the FCRA as to Furnisher)**

124. Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

125. This is an action for willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

126. Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

127. Pursuant to the Act, furnishers of disputed information must be notified by the credit reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

128. The Furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

129. The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the Furnishers must report the results to any other agencies which were supplied such information.

130. Upon information and belief, and as described above, Furnisher(s) received notice of Plaintiff's dispute(s) from one or more of the Bureaus.

131. Furnisher violated 15 U.S.C. § 1681s-2 (b) as described above, including, but not limited to, failing to fully and properly investigate the dispute(s) of the Plaintiff, failing to review all relevant information regarding same, and failing to correctly report results of an accurate investigation to the credit reporting agencies.

132. Furnisher continued to report this information on the Plaintiff's credit report after being notified of the dispute(s) regarding the Account(s) as described above.

133. As a result of the conduct, action, and inaction of Furnisher(s), Plaintiff suffered damage as described above.

134. The conduct, action, and inaction of Furnisher was willful, rendering it liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

135. In the alternative, the conduct, action, and inaction of Furnisher was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

136. Plaintiff is entitled to recover reasonable costs and attorney's fees from each Furnishers in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

137. WHEREFORE, Plaintiff demands judgment for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. §§ 1681n-1681o.

**THIRD CAUSE OF ACTION**
**(Violation of the FDCPA as to Debt Collector)**

138. Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

139. Debt Collector's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to, 15 U.S.C. §§ 1692d, 1692e, and 1692f.

140. Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

141. Debt Collector violated said section, as described above, in violation of §§ 1692e, 1692e (2), 1692e (5), 1692e (7), 1692e (8), and 1692e (10).

142. Alternatively, Debt Collector's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to, 15 U.S.C. §§ 1692f, 1692f (1).

143. Pursuant to 15 U.S.C. §1692f, a debt collector may not use any unfair or unconscionable means in connection with the collection of any debt.

144. Debt Collector violated this section by unfairly reporting the Account as described above.

145. Pursuant to 15 U.S.C. § 1692d a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

146. Debt Collector violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

147. Debt Collector violated said section, as described above, in violation of § 1692d.

148. Reporting a debt to a credit reporting agency is "a powerful tool designed, in part, to wrench compliance with payment terms…" *Sullivan v. Equifax, Inc.*, C.A. No. 01-4336, 2002 U.S. Dist. LEXIS 7884, at *15 (E.D. Pa. Apr. 19, 2002) citing Robert J. Hobbs, Fair Debt Collection § 5.5.10, p. 170-71 [(3d Ed. 1996); *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993); *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991).

149. Reporting a debt to a credit reporting agency is a communication in connection with the collection of a debt. *See Sullivan, supra*.

150. "[T]he reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls." Federal Trade

Commission, Office of the Secretary, Fair Debt Collection Practices Act, Staff Opinion Letter, 1997 WL 33791232, at *1 (December 23, 1997).

151. By reason thereof, Debt Collector is liable to Plaintiff for judgment that Debt Collector's conduct violated Sections 1692d, 1692e, and/or 1692f et seq. of the FDCPA and Plaintiff is entitled to actual damages, statutory damages, costs and attorneys' fees.

## DEMAND FOR TRIAL BY JURY

152. Plaintiff demands a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

a) For actual damages provided and pursuant to 15 U.S.C. § 1681o (a) be awarded for each negligent violation as alleged herein;

b) For statutory damages provided and pursuant to 15 U.S.C. § 1681n (a);

c) For punitive damages provided and pursuant to 15 U.S.C. § 1681n (a)(2);

d) For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n (a)(3) and 15 U.S.C. § 1681o (a)(2); and

e) For any such other and further relief as this Court may deem just and proper.

**WHEREFORE**, Plaintiff demands judgment against Debt Collector as follows:

a) For actual damages provided and pursuant to 15 U.S.C. § 1692k(a)(1);

b) For statutory damages provided and pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) For attorney fees and costs provided and pursuant to 15 U.S.C. § 1692k(a)(3);

d) For declaratory relief stating that Defendant violated the FDCPA pursuant to 28 U.S.C. § 2201; and

e) For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated: October 21, 2026

Respectfully submitted,

*s/ Jeffrey Shafto*
Jeffrey Shafto, Esq
Law Office of Jeffrey Shafto, LLC
145 Newbury Street
Portland, Maine 04101
Tel: 207.619.4006
jshafto@shaftolaw.com

*s/ Eliyahu Babad*
By: Eliyahu Babad, Esq.
Stein Saks, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
(201) 282-6500 ext. 121
EBabad@SteinSaksLegal.com
Pending Admission Pro Hac Vice

*Attorneys for Plaintiff*